FILED
United States Court of Appeals
Tenth Circuit

June 8, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DERRICK DEJUAN WOOTEN,

    Defendant - Appellant.

No. 16-7084
(D.C. No. 6:16-CR-00002-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BALDOCK**, and **MORITZ**, Circuit Judges.[**]
_____

In the context of a sentencing for unlawful possession of a firearm, U.S.S.G § 2K2.1(c) provides that when the defendant uses the firearm cited in the offense of conviction in connection with another offense or attempted offense, the guideline range for that offense or attempted offense should be applied if it is higher than the range calculated under § 2K2.1(a) and (b). For the purposes of this cross reference, "another offense" means "any federal, state, or local offense, . . . regardless of

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1 cmt. n.14(C). In 2016, a federal jury convicted Defendant Derrick Wooten of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). At sentencing, the district court used the cross reference under U.S.S.G. § 2K2.1(c) to apply the attempted-murder guideline under § 2A2.1 and sentenced Wooten to 120 months' imprisonment. Wooten challenges this cross reference. Exercising jurisdiction under 18 U.S.C. § 3742(a)(2), we affirm.

The incident leading to this cross reference began when Wooten received a phone call from his mother in November 2015.[1] She said that "Chicago" (Demetrius Carey) was at her house threatening to kill her if he could not find Wooten. Wooten took his pistol and drove approximately three-quarters of a mile to his mother's house. He exited his vehicle with the pistol in his hand and exchanged words with Carey. When Carey moved his hands toward his beltline, Wooten began firing. Wooten fired approximately seven times from the area at the front of his mother's property as Carey fled. Wooten followed Carey down the street and around the corner, where Wooten fired at least one more shot. One of the rounds hit Carey in the face. According to the Addendum to the Presentence Report, the round entered at Carey's jawline and exited at the bridge of his nose. Carey was unarmed.

---

[1] During the sentencing hearing, the government called a neighborhood resident who witnessed the events and one of the officers who responded to the scene. The district court found the government's witnesses to be credible, adopted the facts in the Presentence Investigation Report, and considered the statements Wooten voluntarily made while in custody.

2

Using the cross reference in U.S.S.G. § 2K2.1(c)(1)(A), the district court applied the attempted murder guideline in § 2A2.1 and found a total offense level of 37. That offense level, when combined with Wooten's criminal history category of III, provided a sentencing range of 262–327 months' imprisonment. But because 120 months is the maximum sentence for a felon in possession of a firearm under 18 U.S.C. § 924(a)(2), 120 months became the guideline sentence according to U.S.S.G. § 5G1.1(a). Based on this calculation and the 18 U.S.C. § 3553 factors, the district court sentenced Wooten to 120 months in prison and three years' supervised release.

Wooten timely appeals his sentence and argues that (1) because he acted in self-defense, he did not attempt a homicide offense; and alternatively (2) due to his lack of malice aforethought and premeditation, the most appropriate guideline to apply is § 2A2.2 covering attempted manslaughter rather than § 2A2.1 for attempted murder. Essentially, Wooten argues that the evidence does not support the district court's findings and application of the guidelines. Our conclusions on the facts of this case, however, necessarily lead us to conclude that attempted first-degree murder is the most appropriate guideline to apply.

We review the district court's selection of the most analogous offense guideline with due deference, limiting our review of its factual findings for clear error but conducting *de novo* review over its interpretations of the guidelines and the ultimate determination of which of several offense guidelines most appropriately applies to the facts as found. *United States v. Fortier*, 180 F.3d 1217, 1225 (10th Cir.

3

1999).  The government must prove the facts supporting the cross reference by a preponderance of the evidence.  *See id.*  "A finding of fact is clearly erroneous only if it is without factual support in the record or if the appellate court, after reviewing all of the evidence, is left with a definite and firm conviction that a mistake has been made."  *United States v. Maestas*, 642 F.3d 1315, 1319 (10th Cir. 2011) (quoting *United States v. Talamante*, 981 F.2d 1153, 1158 (10th Cir. 1992)).

Wooten first argues that Carey's earlier threat against his mother and Carey's action in reaching for his own beltline prompted him to act in self-defense. Generally, "a person may resort to self-defense if he reasonably believes that he is in imminent danger of death or great bodily harm, thus necessitating an in-kind response."  *United States v. Toledo*, 739 F.3d 562, 567 (10th Cir. 2014).  Wooten's argument, however, defies common sense because self-defense "requires the defendant's reasonable belief that deadly force was necessary."  *Id*. at 568.[2]  Wooten armed himself and traveled nearly a mile to a situation where he knew he was likely to find trouble.  At the first instance of a potentially threatening action, he began firing rather than brandishing his gun or attempting to leave even though none of the witnesses saw Carey with a gun and Carey was, in fact, unarmed.  Finally, and most condemning, even if Wooten had fired the first shot (or the first few shots) in self-defense, he could not have reasonably fired the subsequent shots in self-defense

---

[2] Definitions of self-defense the parties suggested have substantially the same elements.  *See* Okla. Stat. tit. 21, § 733(a)(2); *Robinson v. State*, 255 P.3d 425, 432 (Okla. Crim. App. 2011) (applying Oklahoma statutory self-defense definition); LaFave and Scott, *Substantive Criminal Law*, § 5.7 (1986).

4

while Carey was fleeing the confrontation. The district court did not clearly err in determining that Wooten did not act in self-defense.

We next address the district court's selection of the attempted first-degree-murder guideline to the exclusion of other attempted-homicide guidelines. We apply guidelines pertaining to first-degree murder when the evidence presented "demonstrates by a preponderance of the evidence that the defendant harbored malice aforethought and premeditation." *Fortier*, 180 F.3d at 1226 (citing *United States v. Nichols,* 169 F.3d 1255, 1272, 1275–76 (10th Cir. 1999)); *see also* 18 U.S.C. § 1111(a). Wooten argues that he lacked malice because he was in a heat of passion and, further, that he lacked premeditation or specific intent to kill. The district court expressly found malice aforethought, and, because it selected the attempted first-degree murder guideline, the court necessarily also found premeditation. Because the district court did not clearly err in finding the requisite mental state, we agree that the most appropriate guideline is attempted first-degree murder.

Malice aforethought "may be established by evidence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000) (quoting *United States v. Soundingsides*, 820 F.2d 1232, 1237 (10th Cir. 1987)). Continuing to shoot approximately nine times at a person who is not an immediate threat and is running away from a confrontation in a residential

5

area certainly constitutes reckless behavior and a gross deviation from a reasonable standard of care.

To negate malice aforethought, Wooten argues he acted in a heat of passion because of the phone call from his mother and the "heated dispute" between himself and Carey. The heat of passion defense requires a provocation severe and sudden enough to cause "a passion of fear or rage in which the defendant loses his normal self-control as a result of circumstances that would provoke such a passion in an ordinary person, but which did not justify the use of deadly force." *United States v. Serawop*, 410 F.3d 656, 664–65 (10th Cir. 2005) (quoting *United States v. Browner*, 889 F.2d 549, 552 (5th Cir. 1989)). The district court did not accept Wooten's arguments pertaining to the phone call as an impassioning factor and noted that Wooten traveled nearly a mile, with his gun, to the trouble. We are not left with a definite and firm conviction that a mistake was made, and we conclude that Wooten has not met the high standard of clear error on this point. *See Maestas*, 642 F.3d at 1319. To the extent that Wooten claims he and Carey had a heated dispute, his own statements belie that characterization. During his post arrest interview, Wooten told officers that he had asked Carey, "What are you doing here? What do you want?" before Carey reached for his pants and Wooten began firing. It would be inappropriate to consider this interaction sufficiently impassioning for the purposes of Wooten's defense.

The two cases Wooten cites for support do not help him. *United States v. Kupfer*, 68 F. App'x 927 (10th Cir. 2003) (unpublished), a nonbinding Order and

6

Judgment, dealt with a much more provoking circumstance. In that case, we affirmed the district court's application of the voluntary manslaughter guideline over the defendant's request for the *involuntary* manslaughter guideline where, during an already heated interaction, the victim had just informed the defendant that he had sexually assaulted the defendant's sister. *Id.* at 930. And in *United States v. Cherry*, 572 F.3d 829 (10th Cir. 2009), neither party challenged the district court's finding of heat of passion. In that case, the defendant jumped out of his vehicle prepared to fight and exchanged threats with the victim as part of a larger confrontation and leading up to a mutual gunfight. *Id.* at 830. Additionally, we noted in dicta that the district court may have been "lenient" in making that finding and not "analogizing Mr. Cherry's conduct to a more serious form of homicide." *Id.* at 832. Here, we find no clear error in the district court's finding of malice aforethought.

Finally, while we may not presume premeditation, *Fortier*, 180 F.3d at 1226, it is "properly inferred where the apparent purpose of the lethal act is to cause the victim's death," *Wood*, 207 F.3d at 1232. Further, "a killer can develop premeditation during the incident at issue," and the government does not need to "show that the defendant deliberated for any particular period of time." *United States v. Treas-Wilson*, 3 F.3d 1406, 1409 (10th Cir. 1993) (quoting *United States v. Slader*, 791 F.2d 655, 657 (8th Cir. 1986)). Wooten's pursuit of Carey is a sufficient evidentiary basis for the district court's determination. If Carey was hit before he went around the corner, then it appears that Wooten followed with the intent to finish killing him. If Carey was hit after he went around the corner, then it appears that

7

Wooten engaged in an intentional search-and-destroy mission. The district court did not clearly err in finding premeditation.

For the reasons set forth above, we AFFIRM.

Entered for the Court


Bobby R. Baldock
Circuit Judge