# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-2735

_____

United States of America,     *

                          *

        Appellee,     *

                          *     Appeal from the United States

      v.                    *     District Court for the

                          *     Southern District of Iowa.

Juan Ramon Palomares-Alcantar,     *

                          *           [PUBLISHED]

       Appellant.     *

_____

Submitted: March 15, 2005
Filed: May 5, 2005

_____

Before WOLLMAN, LAY, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Juan Ramon Palomares-Alcantar pleaded guilty to knowingly transporting illegal aliens within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). The district court[1] sentenced him to 18 months in prison and two years of supervised release. Palomares-Alcantar appeals his sentence. For the reasons discussed below,

---

[1] The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

we affirm the district court's Guidelines calculations, but we remand for resentencing consistent with United States v. Booker, 125 S. Ct. 738 (2005).

## I.

The following facts were undisputed. Palomares-Alcantar was driving a 1995 Ford Econoline van containing 20 individuals whom he knew to be illegal aliens. They were traveling from Phoenix, Arizona, to Chicago, Illinois. There were only seats and seatbelts for Palomares-Alcantar and one passenger; the remaining 19 passengers rode on the floor of the van. The Iowa State Patrol stopped the van on the morning of March 14, 2004, for speeding on Interstate 80 near Atlantic, Iowa. Some of the aliens told the police that they had paid between $1,200 and $1,500 to an unknown alien smuggler–someone other than Palomares-Alcantar–to be transported.

Some facts regarding the van were in dispute. The presentence report described it as having the rated capacity to carry 15 people, but at sentencing, Immigration and Customs Enforcement Special Agent Martha Trevino described the van as having the rated capacity to carry seven people. She provided the district court with seven photographs of the van. One photograph showed a frontal view of the van, and another photograph showed the van with the doors to the rear passenger compartment opened. The remaining photographs showed that the van's tires were bald, with the tread eroded to the point that the steel belts underneath were visible. There was no evidence as to whether Palomares-Alcantar knew of the condition of the tires. The district court examined the photographs and found that it was "unquestionably not a 15-passenger van," but that the district court was "going to disregard the issue of the rating of the van" in making its Guidelines calculations.

The district court made the following Guidelines calculations. Palomares-Alcantar's base offense level was 12, see U.S. Sentencing Guidelines Manual (USSG) § 2L1.1(a)(2), he received a three-level enhancement because of the number of illegal aliens transported, see USSG § 2L1.1(b)(2)(A), his offense level was increased to 18

because he intentionally or recklessly created a substantial risk of death or serious bodily injury to others, see USSG § 2L1.1(b)(5), and he received a three-level reduction for acceptance of responsibility, see USSG § 3E1.1.

Palomares-Alcantar argued that he was entitled to a three-level reduction because the offense was not committed for profit, see USSG § 2L1.1(b)(1). He acknowledged, however, that the applicability of this reduction was moot if the district court found that he intentionally or recklessly created a substantial risk of death or serious bodily injury because § 2L1.1(b)(5) established an offense level of 18 with or without the § 2L1.1(b)(1) reduction. Palomares-Alcantar objected to the application of § 2L1.1(b)(5), arguing that he did not intentionally or recklessly create a substantial risk of death or serious bodily injury to others. Finally, he objected to the Guidelines on the basis of Blakely v. Washington, 124 S. Ct. 2531 (2004).

The district court overruled Palomares-Alcantar's Blakely objection, concluding that it was bound to apply the Guidelines until the Supreme Court or the Eighth Circuit declared otherwise. The district court also overruled Palomares-Alcantar's objection to the application of § 2L1.1(b)(5). The district court concluded that the presence of 21 people in the van, regardless of whether it was designed to carry seven or 15 people, "was far in excess of any ability for the safety design of the van to provide safe transportation under the best of circumstances." The overcrowding of the van was exacerbated, the district court continued, by the absence of seats or seatbelts for the 19 passengers who were riding on the floor of the van, and by the baldness of the van's tires. Under these conditions, driving the van from Phoenix at interstate highway speeds intentionally or recklessly created a substantial risk of death or serious bodily injury to the passengers in the van, the district court concluded. Because § 2L1.1(b)(5) applied to Palomares-Alcantar's conduct, the district court concluded, there was no need to rule on whether the offense was committed for profit within the meaning of USSG § 2L1.1(b)(1).

Based on a total offense level of 15 and a Category I criminal history, Palomares-Alcantar's Guidelines imprisonment range was 18-24 months. The district court sentenced him to 18 months in prison and two years of supervised release. Had the district court adopted the Guidelines calculations urged by Palomares-Alcantar, his total offense level would have been 12, and his Guidelines imprisonment range would have been 10-16 months.

Palomares-Alcantar appeals, arguing that the district court erred by finding that he intentionally or recklessly created a substantial risk of death or serious bodily injury; if so, he is entitled to the § 2L1.1(b)(1) reduction because he did not commit the offense for profit; and, in any event, his sentence violates Blakely and Booker.

## II.

We conclude that the district court did not clearly err in finding that Palomares-Alcantar intentionally or recklessly created a substantial risk of death or serious bodily injury to others, and that the district court properly applied § 2L1.1(b)(5). See United States v. Flores-Flores, 356 F.3d 861, 862-63 (8th Cir. 2004) (affirming the application of § 2L1.1(b)(5) where the defendant was transporting 11 illegal aliens from Arizona to Michigan in a van that had only four seats and seatbelts, requiring eight of the aliens to ride on the floor); United States v. Rio-Baena, 247 F.3d 722, 723 (8th Cir. 2001) (affirming the application of § 2L1.1(b)(5) where the defendant was transporting 21 illegal aliens from Phoenix to Chicago in a van that had no seats or seatbelts for them); United States v. Ortiz, 242 F.3d 1078, 1078-79 (8th Cir. 2001) (affirming the application of § 2L1.1(b)(5) where the defendant was transporting 23 illegal aliens in a van equipped with seats and seatbelts for 14 passengers).

Because § 2L1.1(b)(5) was correctly applied, it is irrelevant (as Palomares-Alcantar acknowledges) whether he committed the offense for profit because his offense level would remain 18 with or without a § 2L1.1(b)(1) reduction.

Finally, the government concedes error under <u>Booker</u>.  Although the district court's Guidelines calculations were correct, the district court (understandably) treated the Guidelines as mandatory.  Having preserved a timely <u>Blakely</u> objection below, Palomares-Alcantar is entitled to a resentencing hearing at which the district court treats the Guidelines as advisory and imposes a sentence based on its consideration of all the factors listed in 18 U.S.C. § 3553(a).  Accordingly, we remand this case to the district court for resentencing consistent with <u>Booker</u>, 125 S. Ct. at 764-65, 769.

_____